United States Court of Appeals, Eleventh Circuit.

No. 94-4692.

UNITED STATES of America, Plaintiff-Appellee,

v.

George G. ROGERS, Defendant-Appellant.

Sept. 17, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-6044-CR-NCR), Norman C. Roettger, Jr., Chief Judge.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

A jury found appellant George Rogers guilty of committing various firearms violations named in a three count indictment. He now appeals the convictions, claiming that reversible error occurred when the district court failed to instruct the jury on an essential element of each of the offenses. Though the evidence presented at trial is insufficient to sustain the jury's verdict on one of the three counts, we deem the instructional omission to be harmless beyond a reasonable doubt and thus affirm on the remaining two charges.

I. BACKGROUND

After arresting appellant George Rogers for driving while intoxicated, Broward County, Florida Deputy Sheriff Mahmoud Mashnouk searched both Rogers and the truck he had been driving. Deputy Mashnouk discovered that Rogers was carrying on his person a .22 caliber handgun and one magazine of .380 caliber ammunition.

[*]HONORABLE FLOYD R. GIBSON, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Inside Rogers's vehicle, Mashnouk found a loaded .380 caliber Baretta pistol equipped with a flash suppressor. In addition, the officer located beneath the driver's side seat of the truck a black bag containing a MAC-11 pistol, a silencer, a flash suppressor, .380 caliber ammunition, several ammunition magazines for the MAC-11, two holsters, and miscellaneous other items. Later investigation revealed that the MAC-11 had been fully modified to function as a "machinegun"[1] under federal law. Further, the silencer did not possess a serial number and had not been registered in the National Firearms Registration and Transfer Record.

Following his arrest, Rogers agreed to be interviewed by, among others, Special Agent Dale Armstrong from the Bureau of Alcohol, Tobacco, and Firearms. During this conversation, Rogers professed his expertise in weapons and correctly identified the silencer and the MAC-11. Nonetheless, Rogers vehemently denied ownership of those two firearms and claimed that he had no idea who might have placed them in his vehicle.

Thereafter, the United States returned an indictment charging Rogers with: 1) knowing possession of a machinegun in violation of 18 U.S.C. § 922(o ) (1994) (count one); 2) knowing possession of a silencer not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§

_____

[1]"The term "machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger...." 26 U.S.C. § 5845(b) (1994); see 18 U.S.C. § 921(a)(23) (1994) (providing that the term "machinegun," as used in 18 U.S.C. §§ 921-930, should be defined by reference to 26 U.S.C. § 5845(b)).

5861(d), 5871 (1994) (count two); and 3) knowing possession of a silencer without a serial number in violation of 26 U.S.C. §§ 5861(i), 5871 (1994) (count three). At trial, the Government played for the jury an edited audiotape of Rogers's postarrest interview.[2] Testifying on his own behalf, Rogers contended that

---

[2]As the following excerpts show, this recording revealed in no uncertain terms the depth of Rogers's familiarity with weapons, their construction, and their component parts:

> [Rogers]: I don't know anything about [the ownership of the MAC-11 or the silencer].
>
> [Agent]: Okay.
>
> [Rogers]: And I definitely know what they are.
>
> [Agent]: You do.
>
> [Rogers]: Yes sir.
>
> [Agent]: Okay, what are they?
>
> [Rogers]: One is a uh, that is a .380, I think a MAC.
>
> [Agent]: Okay.
>
> [Rogers]: And the other is a, that is a silencer.
>
> [Rogers]: You want to ask me how to make a silencer, I'll tell ya. You get, you get a [expletive] oil filter, that's the best silencer you can get. Don't they teach you that in, in a, in Special Forces? That's what they taught me.
>
> [Agent]: Do you know, do you know what these are?
>
> [Rogers]: Yes sir.
>
> [Agent]: What are those?
>
> [Rogers]: Those are baffles for a silencer.
>
> [Agent]: How did you, how did you learn so much about, about silencers?
>
> [Rogers]: I studied.
>
> [Agent]: Studied?

the black bag seized by Deputy Mashnouk was not his, and he continued to maintain that he had no knowledge of how the illegal weapons came to be in his truck.  Also, Rogers again positively identified the firearms that are the subject of this case.[3]

---

[Rogers]:  Yes, sir.

[Agent]:  Okay.

[Rogers]:  In fact if you probably go to my house now there's a book on silencers.

[Rogers]:  There's a book I think, unless I packed it away, I don't know.

[Agent]:  Okay.

[Rogers]:  Some screwball book I bought at a gun show.

[Agent]:  Okay, anything ...

[Rogers]:  But it's nothing we weren't taught.

[Okay]:  Okay.

[Rogers]:  You know, you want a silencer, you, you, you get a, what's the best silencer?

[Agent]:  Sionics.

[Rogers]:  No, it's, it's a two liter bottle.  I mean everybody knows that, I mean this....

[Agent]:  A two liter Coke bottle you're telling me ...

[Rogers]:  Yeah....

[3]The following exchange took place between Rogers and his attorney:

Q. Mr. Rogers, Government's Exhibit No. 5, do you know what this is?

A. This is a silencer, yes.  I know exactly.

Q. You are familiar with it?

A. Yes.

Q. Mr. Rogers, showing you Government's Exhibit No. 2,

While instructing the jury on the pertinent offenses, the district court generally advised the panel that for each violation the Government had to prove Rogers "knowingly possessed" the firearm in question. In explaining the law applicable to count 2, however, the court elaborated:

> It is not necessary for the Government to prove that the Defendant knew that the item described in the indictment was a "firearm" which the law requires to be registered.... What must be proved beyond a reasonable doubt is that the Defendant knowingly possessed the item as charged, that such item was a "firearm" as defined above, and that i[t] was not then registered to the Defendant in the National Firearms Registration and Transfer Record.

Rogers objected to this instruction on the basis that the prosecution could not prevail unless it demonstrated beyond a reasonable doubt that "the defendant knew th[e] items in question were firearms" under the National Firearms Act, 26 U.S.C. §§ 5801-5872 (1994) (the "Act"). The district court overruled Rogers's objection.

The jury subsequently convicted Rogers on all counts; the district judge sentenced him to time served (thirty-three months), three concurrent three year terms of supervised release, and a special assessment of $150. Relying on the United States Supreme Court's recent opinion in *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), Rogers presently asserts the district court committed error when it refused to inform the jury that the Government was obligated to establish he knew the

do you know what this is?

A. Yes. It's a .380 Ingram [MAC-11] and it was manufactured first for the police departments and then when war broke out they introduced it into the military....

characteristics of the weapons at issue that subjected them to the Act's regulatory scheme.

II. DISCUSSION

The Act contains various directives, including registration requirements, that apply to a class of statutorily defined "firearms." *See* 26 U.S.C. §§ 5845(a), 5861 (1994). In *Staples,* the Supreme Court addressed the *mens rea* element under § 5861(d) of the Act.[4] After expressing its reluctance to interpret laws in a manner that would "criminalize a broad range of apparently innocent conduct," *Staples,* 511 U.S. at ----, 114 S.Ct. at 1799 (quotation omitted), the Court concluded that the Government can procure a conviction under the subsection only when it proves the defendant "knew of the features of his [weapon] that brought it within the scope of the Act," *id.* at ----, 114 S.Ct. at 1804. We must now consider the effect of this holding, which overrules the previous law of this Circuit, *cf. United States v. Gonzalez,* 719 F.2d 1516, 1522 (11th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984), on Rogers's convictions.

A. Rogers's Conviction Under 18 U.S.C. § 922(*o*)

With limited exceptions, 18 U.S.C. § 922(*o*) makes it unlawful for an individual to possess a machinegun. In a consonant voice, the parties contend that Rogers's conviction under this subsection should be reversed due to insufficient evidence. We agree.[5] The

---

[4]Section 5861(d) makes it unlawful for a person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d) (1994).

[5]We also agree with the Government that the Supreme Court's decision in *Staples* applies with equal force to prosecutions

MAC-11 machinegun located in Rogers's truck had originally been manufactured as a semi-automatic pistol. Because the Government did not introduce any evidence showing that Rogers was aware that the MAC-11 had been altered to operate as a fully automatic weapon,[6] his conviction on this count cannot stand. *See Staples,* 511 U.S. at ----, 114 S.Ct. at 1804.

B. Rogers's Convictions Under 26 U.S.C. §§ 5861(d), (i), 5871

The jury also found that Rogers possessed an unregistered and unserialized silencer in violation of 26 U.S.C. §§ 5861(d), (i), 5871. These convictions pose a considerably more difficult problem on this appeal. As discussed above, the district court, over a defense objection, refused to inform the jury that the Government had the burden of showing Rogers "knew th[e] items in question were firearms" under the Act.[7] With the benefit of the Supreme Court's opinion in *Staples,* we can now indubitably state that the district court's action effectively omitted from the instructions an essential element of the crime charged under § 5861(d).[8]

---

under 18 U.S.C. § 922(*o* ).

[6]Notably, the conversion process, which sometimes ensues from normal wear and tear, *see Staples,* 511 U.S. at ----, 114 S.Ct. at 1802, resulted in few, if any, noticeable changes in the outward appearance of the handgun.

[7]We underscore that the district court's instructions were entirely in accord with the law of this Circuit at the time of trial.

[8]The Court in *Staples* limited its analysis to § 5861(d), which prohibits the possession of an unregistered firearm. Section 5861(i), in turn, proscribes the possession of a firearm unidentified by a serial number. Because we adjudge the instructional error involved here to be harmless, for the purposes of this case only we will assume without deciding that the Court's pronouncements in *Staples* apply as well to criminal proceedings under § 5861(i).

In 1947, the Supreme Court stressed that in a criminal case "guilt is determined by the jury, not the court." *United Bhd. of Carpenters v. United States,* 330 U.S. 395, 410, 67 S.Ct. 775, 783, 91 L.Ed. 973 (1947). This right, grounded in the Sixth Amendment[9], to have the jury decide guilt or innocence reposes within that body the "overriding responsibility ... to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction." *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). "Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence." *Sullivan v. Louisiana,* 508 U.S. 275, 277, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993).

While the Sixth Amendment ensures that the defendant's peers in the community will serve as the ultimate arbiters of his fate, the Fifth Amendment's Due Process Clause[10] creates the legal framework which guides the jury in its task. *See id.* at 277-78, 113 S.Ct. at 2080-81. Significantly, the Government bears the burden of proving beyond a reasonable doubt all elements of the crime charged. *Id.* Indeed, the Supreme Court has "explicitly h[e]ld that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every

---

[9]"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI.

[10]"No person shall be ... deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.

fact necessary to constitute the crime with which he is charged."
*In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d
368 (1970). Put simply, then, "the jury verdict required by the
Sixth Amendment is a jury verdict of guilty beyond a reasonable
doubt." *Sullivan,* 508 U.S. at 278, 113 S.Ct. at 2081.

Given this background, it is readily apparent that in this
case the district court committed an error of constitutional
dimension when it declined to instruct the jury on an essential
element of the crime. Our quite daunting task is to determine the
effect of that error. Rogers asserts that the failure to instruct
on an essential element of an offense is *per se* reversible. On the
other hand, the Government predictably declares that affirmance is
in order because the error was harmless. Neither we nor the
Supreme Court has ever definitively ascertained the consequences
that should follow from an instructional omission, and our sister
circuits are divided on the issue.[11]

---

[11]Some circuits have determined that an instructional
omission mandates reversal regardless of the circumstances. *See*
*United States v. Pettigrew,* 77 F.3d 1500, 1511 (5th Cir.1996)
(explaining that harmless error analysis is inapplicable where an
essential element "was withheld from the jury"); *Hoover v.*
*Garfield Heights Mun. Court,* 802 F.2d 168, 178 (6th Cir.1986)
("[W]e conclude that the failure to instruct the jury on an
essential element of the crime charged is one of the exceptional
constitutional errors to which the *Chapman* harmless error
analysis does not apply."), *cert. denied,* 480 U.S. 949, 107 S.Ct.
1610, 94 L.Ed.2d 796 (1987). Other circuits have recognized that
this type of mistake will sometimes be amenable to harmless error
scrutiny. *Roy v. Gomez,* 81 F.3d 863, 866-67 (9th Cir.1996) (en
banc) (finding that harmless error analysis applies to a failure
to instruct on an element of the offense); *United States v.*
*Parmelee,* 42 F.3d 387, 392-93 (7th Cir.1994) (same), *cert.*
*denied,* --- U.S. ----, 116 S.Ct. 63, 133 L.Ed.2d 25 (1995).

We believe that this discord reflects the gravity of
the issue, and we realize, of course, that our opinion in
this case can merely provide controlling authority within

To settle this dispute, we begin by recalling the benchmark decision in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There, the Court rejected the notion that a constitutional error in all cases compels reversal. *Id.* at 22, 87 S.Ct. at 827. Rather, the encroachment at trial of a constitutional right may be considered harmless if the beneficiary of the error "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828. By so holding, the Court "continued a trend away from the practice of appellate courts in this country and in England of reversing judgments for the most trivial errors." *Connecticut v. Johnson,* 460 U.S. 73, 82, 103 S.Ct. 969, 975, 74 L.Ed.2d 823 (1983) (plurality opinion) (quotation and alteration omitted).

The *Chapman* Court did acknowledge, though, that there exist "some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827-28. Throughout the years, it has become evident that this limitation is confined to constitutional errors that cause a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Thus, we must

our own Circuit. For these reasons, we join the Ninth Circuit in noting that further guidance and clarification would be extremely helpful. *See Hennessy v. Goldsmith,* 929 F.2d 511, 515 n. 2 (9th Cir.1991); *cf. Teel v. Tennessee,* 498 U.S. 1007, 1007, 111 S.Ct. 571, 571, 112 L.Ed.2d 577 (1990) (White, J., dissenting from the denial of certiorari).

reverse without regard to the underlying facts of a particular case where, for example, the defendant is totally deprived of the right to counsel, tried before a biased judge, refused his right to self-representation, or denied his right to a public trial. *See id.* at 309-10, 111 S.Ct. at 1264-65 (collecting cases). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark,* 478 U.S. 570, 577-78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (citation omitted).

We would be hard pressed to conclude that incomplete jury instructions exemplify a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by "harmless-error' standards." *Fulminante,* 499 U.S. at 309, 111 S.Ct. at 1265. Instead, we liken the error before us to other "trial errors which occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented.' " *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082-83 (quoting *Fulminante,* 499 U.S. at 307-08, 111 S.Ct. at 1264). Of particular relevance here are those cases dealing with the application of harmless error analysis to constitutionally defective jury instructions.[12] In *Rose,* the Court ruled that an

---

[12]The Supreme Court has stated that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose,* 478 U.S. at 579, 106 S.Ct. at 3106. We find it telling that in only one case has the Supreme Court deemed an instructional error to be *per se* reversible. *See Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The trial court in *Sullivan* had given a constitutionally defective reasonable doubt instruction

error under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which erects an unconstitutional mandatory presumption shifting to the defendant the burden of proof on an element of the offense, could in some cases appropriately be the subject of harmless error review. *Rose,* 478 U.S. at 579-82, 106 S.Ct. at 3106-08. The Court restated this conclusion in *Carella v. California,* 491 U.S. 263, 266, 109 S.Ct. 2419, 2421, 105 L.Ed.2d 218 (1989) (per curiam). More importantly, however, *Carella* included a cogent concurrence penned by Justice Scalia more precisely elaborating upon the type of harmless error inquiry suitable when reviewing a *Sandstrom* claim. *See Carella,* 491 U.S. at 267-73, 109 S.Ct. at 2421-24 (Scalia, J., concurring).

Other circuits have indicated that Justice Scalia's concurrence in *Carella* outlines the harmless error framework to be

---

that effectively "vitiate[d] *all* the jury's findings." *Id.* at 281, 113 S.Ct. at 2082. Thus, in that case there was no finding of guilt beyond a reasonable doubt upon which harmless error scrutiny could operate. *Id.* at 280-81, 113 S.Ct. at 2082-83.

> We realize that at least one Court has relied upon *Sullivan* to foreclose the possibility of harmless error review where there has been an instructional omission. *See Pettigrew,* 77 F.3d at 1511. With respect, we feel that *Pettigrew* reads too broadly the basic holding of *Sullivan.* Unlike a flawed reasonable doubt instruction, which completely negates every jury finding, the typical instructional omission will affect only one element of the crime. Thus, as in this case, the jury will have made a constitutionally valid determination of guilt on all issues save one. Consequently, contrary to *Sullivan,* there is a legitimate, though admittedly inchoate, adjudication of guilt upon which, under appropriate circumstances, harmless error analysis can operate. *See United States v. Raether,* 82 F.3d 192, 194 (8th Cir.1996) (observing that *Sullivan* does not prevent harmless error review where "the district court's failure to let the jury decide the [omitted] issue did not prevent the jury from properly deciding the other issues in the case").

used in appeals involving instructions that omit an essential element of the offense. *Roy,* 81 F.3d at 866-67; *Parmelee,* 42 F.3d at 392-93. We understand full well that there are some important differences between the incomplete instructions in this case and the *Sandstrom* violation at issue in *Carella.* Nonetheless, we, too, find Justice Scalia's concurrence persuasive in the instant context and therefore deem the reasoning of that opinion to be applicable when adjudicating the effect of instructional omissions. *Cf. Carella,* 491 U.S. at 270, 109 S.Ct. at 2423 (Scalia, J., concurring) (suggesting that all errors in instructions that "deprive[ ] the jury of its factfinding role" should be evaluated similarly).

According to Justice Scalia, where the trial court's directions prevented the jury from determining guilt beyond a reasonable doubt on every element of the offense, due regard for the defendant's Fifth and Sixth Amendment rights necessitates that harmless error analysis be available only in those "rare situations when the reviewing court can be confident that such an error did not play any role in the jury's verdict." *Id.* at 270, 109 S.Ct. at 2423 (quotations and alteration omitted). Consequently, an instructional omission, similar to a *Sandstrom* error, may be viewed as harmless only in three rather infrequent scenarios: 1) Where the infirm instruction pertained to a charge for which the defendant was acquitted (and not affecting other charges); 2) Where the omission related to an element of the crime that the defendant in any case admitted; and 3) Where the jury has necessarily found certain other predicate facts that are so closely

related to the omitted element that no rational jury could find those facts without also finding the element.[13]  *See id.* at 270-71, 109 S.Ct. at 2423-24.

Employing this standard in the appeal currently before us, we are confident that the facts of this case fall squarely within the second category listed above.  In his postarrest interview, which was reproduced for the jury via audiotape, and again on the witness stand at trial, Rogers emphatically and without reservation admitted that he knew the item found in his truck was a silencer.

---

[13]In deciding that a constitutional error of the sort involved here can in some situations be harmless, we take comfort in our own prior opinions.  Though before today we have not directly addressed whether an instructional omission can constitute harmless error, our Court has never treated this type of flaw as reversible *per se.  See United States v. Miller,* 22 F.3d 1075, 1079-80 (11th Cir.1994) (holding that omission was not plain error);  *Knight v. Dugger,* 863 F.2d 705, 707, 730-31 (11th Cir.1988) (adopting and appending district court's opinion finding omission harmless);  *United States v. Duncan,* 855 F.2d 1528, 1531-32 (11th Cir.1988) (failing to find plain error), *cert. denied,* 489 U.S. 1029, 109 S.Ct. 1161, 103 L.Ed.2d 220 (1989);  *Adams v. Wainwright,* 764 F.2d 1356, 1363-64 (11th Cir.1985) (concluding that omission was not reversible), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).

In *United States v. Goetz,* 746 F.2d 705, 709 (11th Cir.1984), this Court held that it cannot be harmless when the trial court directs a verdict on an element of the crime charged.  We wholeheartedly accept this observation as an accurate recitation of the law.  *See Rose,* 478 U.S. at 578, 106 S.Ct. at 3106 ("[H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury.")  We do not, however, equate an instructional omission with a directed verdict.  In contrast to a directed verdict, the failure to instruct on a particular element does not completely prohibit the jury from considering evidence relevant to that issue.  *See Roy,* 81 F.3d at 866-67 (distinguishing between an omission and a directed verdict on an element).  Accordingly, we do not believe the Court's opinion in *Goetz* precludes us from finding the error here to be harmless. *But see United States v. Mentz,* 840 F.2d 315, 324 n. 17 (6th Cir.1988) (refusing to distinguish between an omission and a directed verdict on an element).

In fact, Rogers is a self-described student of silencers who had purchased at least one book on the subject. Moreover, Rogers's attorney during closing argument reiterated and attempted to downplay the defendant's concession on this point.[14] These unequivocal assertions convince us that this is a case in which the instructional omission related to an element of the crime that the defendant in any case admitted.

Given Rogers's open and forthright admission, we may find the instructional error harmless if we decide that the Government has "prove[d] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828. "The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan,* 508 U.S. at 279, 113 S.Ct. at 2081. We have absolutely no difficulty in concluding that the constitutional error was

---

[14]Rogers's attorney argued to the jury:

> They make, [the] Government makes a big deal about the fact that Mr. Rogers readily is able to identify and explain what all these items are. They want you to take a quantum leap then because of that assume that there is [sic]. Well that's not the case. Mr. Rogers testified that he has been around firearms since the '60's—or since he was a child; that he has used silencers unfortunately in Vietnam where he was wounded. So, sure, he knows what silencers are. Big deal. He knows what automatic weapons are. He reads books. He's a gun enthusiast. He goes to gun shows. That's not illegal. So what? Yes, he knows what they are and he honestly said "Yes, I know what they are," and expends [sic] what they are. That doesn't mean he knew about it, he had knowledge of it being in the back of his pickup truck. Don't jump to that conclusion like the Government wants you to do.

harmless beyond a reasonable doubt, as we are certain that the verdict in this case would have been the same absent the defective instruction. In light of the relevant evidence evaluated by the jury, including Rogers's repeated admissions, we hold that the omission was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991). It follows that Rogers's convictions for violating 26 U.S.C. §§ 5861(d), (i), 5871 must be affirmed.[15]

III. CONCLUSION

Due to the Supreme Court's recent opinion in *Staples,* we are constrained to reverse for insufficiency of the evidence Rogers's conviction for violating 18 U.S.C. § 922( *o* ). Still, because we have determined that the constitutional error committed by the district court when instructing the jury was harmless beyond a reasonable doubt, we affirm Rogers's convictions for violating 26 U.S.C. §§ 5861(d), (i), 5871.

AFFIRMED in part and REVERSED in part.

\* \* \* \* \* \*

\* \* \* \* \* \*

\* \* \* \* \* \*

---

[15]This case represents another "concrete example of why it would be a quixotic exercise of form over substance to deny under *all circumstances* the application of harmless error analysis to an instructional omission on an uncontested issue." *Hennessy,* 929 F.2d at 515.

*     *     *     *     *     *

*     *     *     *     *     *