[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-8789

_____

D. C. Docket No. 7:95-CR-20-WDO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN PHILLIP LEONARD; SCOTT LEE MOORE,
a.k.a. Dennis L. Spinks, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

**(April 8, 1998)**

Before COX, DUBINA, and BLACK, Circuit Judges.

COX, Circuit Judge:

Juan Philip Leonard, Scott Lee Moore, and Kirby Peterson appeal their convictions and sentences on drug and firearm charges stemming from an arrest following a traffic stop. We affirm in part and reverse in part.

## I. BACKGROUND

On June 29, 1995, the defendants were in a Chevrolet Caprice station wagon traveling north on I-75 through Lowndes County, Georgia, just north of the Georgia-Florida border. Peterson was driving, Moore was in the front passenger seat and Leonard was in the back seat. Lowndes County Deputy Sheriff Mike Sellars observed the station wagon weaving in the lane, and pulled it over. Peterson explained his erratic driving by telling Deputy Sellars that he previously had been sleeping and had only started driving at the Georgia-Florida line. When asked for his driver's license, Peterson produced a 10-day permit issued by an Ohio municipal court to "Kirby Pearison." Deputy Sellars then asked Peterson for the vehicle's registration papers. Peterson stated that Moore, not he, was the owner of the car; Moore admitted ownership of the vehicle but stated that he did not have any registration, insurance, or ownership papers with him. None of the trio could produce photographic identification. Upon being asked, Peterson first told Deputy Sellers that the defendants were traveling from Orlando, but later said that they had come from Miami. Moore indicated that they had been in Florida but did not know where

2

because he had slept through the trip. Leonard also stated that he had been asleep all through Florida and did not know where the trio had been.

At this point, Deputy Sellars became suspicious and asked Moore for permission to search the car. Moore verbally gave consent, but refused to sign a written consent form. Deputy Sellars then indicated that Moore did not have to give permission to search, but if he did not, Sellars would call in a dog to sniff the car. At this, Peterson urged Moore to sign the form, and he did. Deputy Sellars searched the front area of the vehicle, where he found several marijuana seeds and stems in the passenger side ashtray. Meanwhile, Deputy Brian Flemming, who had been called in as backup, searched the rear of the station wagon. Upon lifting the tailgate, he noticed that it felt heavier than expected. He shook it, and heard a thumping sound inside. He removed the interior cover of the tailgate, revealing nine bricks of packaged cocaine and a Glock 9mm handgun. The defendants were then arrested.

A grand jury returned a five-count indictment against the defendants. Count One charged all defendants with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); Count Two charged carrying or using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and Counts Three, Four and Five charged the defendants with possession

3

of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a).[1]

After the presentation of evidence, and over the objections of counsel for all three

defendants, the trial judge charged the jury in part as follows:

> [I]n the second charge, which is using and carrying a firearm, the word "possession" is synonymous with the word "carry," and therefore, the instruction that I give you applies to the words "possession" and to the word "carry."
>
> . . . .
>
> You may find that the element of possession and the element of carrying, as that term is used in these instructions, is present, if you find beyond a reasonable doubt that a defendant had actual or constructive possession, either alone or jointly with others.
>
> . . . .
>
> . . . Now, there's no contention on the government's part that either [Leonard or Moore] actually used a firearm in connection with this drug transaction. The sole contention is that the firearm was carried; that is, that it was possessed, actually or constructively, during and in relation to the drug charge . . . .

---

[1]Count Five, pertaining to Peterson, was later dismissed. Although he had been charged with felony attempted drug abuse in the Court of Common Pleas for Montgomery County, Ohio, this charge had been reduced to a misdemeanor when he pleaded guilty.

(R.3 at 194, 195, 196-97). The jury convicted the defendants on all counts.

## II. DISCUSSION

The defendants raise several issues on appeal, but only two merit discussion:[2] (1) the legal sufficiency of the evidence; and (2) the propriety of the trial court's instructions to the jury regarding the § 924(c) charge. These are both issues of law which we review *de novo*. *See United States v. Kelly*, 888 F.2d 732, 739 (11th Cir. 1989); *United States v. Chandler*, 996 F.2d 1073, 1085 (11th Cir. 1993).

A.  *Was The Evidence Sufficient to Convict the Defendants of Possession of Cocaine With Intent to Sell?*

All three defendants make essentially the same argument with respect to the sufficiency of the evidence. They contend that although the Government's evidence showed that they were traveling in a car in which cocaine and a gun had been hidden, the Government could not show that any of them had actually possessed either. The standard for assessing the sufficiency of evidence is whether any reasonable view of the evidence, considered in the light most favorable to the government, is sufficient to allow a jury to find guilt beyond a reasonable doubt. *United States v. Bush*, 28 F.3d 1084, 1087 (11th Cir. 1994).

---

[2]All other arguments presented are without merit and do not warrant discussion. *See* 11TH CIR. R. 36-1.

To support a conviction for possession of a controlled substance with intent to distribute, the evidence must show that the defendant knowingly possessed the controlled substance with the intent to distribute it. *See United States v. Montes-Cardenas*, 746 F.2d 771, 748 (11th Cir. 1984). The defendants cite numerous cases for the proposition that evidence showing mere presence in a car containing contraband is insufficient in itself to sustain a conviction for possession with intent to distribute. *United States v. Stanley*, 24 F.3d 1314, 1320 (11th Cir. 1994). While this proposition is correct, the evidence in this case indicates more than "mere presence," at least with respect to Moore and Peterson.

When viewed in the light most favorable to the Government, the record shows that all of the defendants evidenced a "consciousness of guilt," which under *Stanley* is sufficient to support an inference of knowledge. *See id.* at 1320. Although both Leonard and Moore indicated they had slept all the way through Florida, Peterson told Deputy Sellers that he had just started driving near the Georgia-Florida border; one of these stories obviously was false. Moore refused to consent to the search of the car, but changed his mind when Deputy Sellers threatened to bring a canine unit. In fact, Peterson urged Moore to allow the deputy to search after hearing that a trained drug dog might search the car. Deputy Sellers testified that none of the defendants looked surprised at the discovery of the cocaine and the handgun in the tailgate. From this

6

evidence, a jury certainly could have drawn the reasonable inference that all three defendants knew the cocaine and the gun were in the car.

The government may satisfy the "possession" prong by showing either actual or constructive possession. To prove actual possession the evidence must show that the defendant either had physical possession of or personal dominion over the thing allegedly possessed. *See United States v. Derose*, 74 F.3d 1117, 1185 (11th Cir. 1996). Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed. *Id.* From the evidence, the jury reasonably could have inferred that Peterson was the driver of a vehicle in which he knew cocaine and a gun were hidden. This is sufficient to constitute personal dominion over the cocaine, and therefore actual possession. *Cf. id.* (government could not show personal dominion because, *inter alia*, record did not show that defendant drove vehicle containing marijuana). The jury reasonably could have inferred that Moore was the owner of a vehicle in which he knew cocaine and a gun were located, and therefore in constructive possession of both. As a jury could reasonably infer the existence of all elements[3] of the offenses the evidence was legally sufficient to convict Moore and

[3]The defendants do not specifically address the element of intent to distribute, but the tailgate contained approximately nine kilograms of cocaine, far more than that involved in personal use, *cf. United States v. Gates*, 967 F.2d 497, 499 (11th Cir. 1992) (two kilograms more than amount for personal use), and enough to support an inference of intent to distribute.

7

Peterson for possession of cocaine with intent to distribute, and to convict Moore for possession of a handgun by a convicted felon.

However, while the jury could have inferred that Leonard knew the cocaine and gun were in the car, the Government points to no evidence that he possessed them, actually or constructively. The record only shows that Leonard was a passenger in the back seat of the station wagon when it was stopped. There is no evidence to indicate that Leonard ever had ownership, dominion or control over the cocaine, the gun, or the vehicle in which they were concealed.

The record also does not support a conviction on the grounds that Leonard aided or abetted the other two defendants. To sustain a conviction for aiding and abetting, the evidence must show that the defendant shared the criminal intent of the principal(s) and committed an overt act in furtherance of the criminal venture. *See United States v. Guida*, 792 F.2d 1087, 1095 (11th Cir. 1986). Regardless of the "guilty knowledge" evidence from which a jury could infer Leonard knew the cocaine and gun were in the tailgate, there is no evidence that he committed any overt acts to aid their possession or concealment. While it is unwise, merely sharing a vehicle in which one knows cocaine and a gun are hidden does not amount to possession or aiding or abetting their possession. The evidence is insufficient to show either that Leonard possessed the cocaine or the Glock pistol, or that he aided and abetted their

8

possession. Therefore, his convictions on Counts One and Three of the indictment must be reversed. As the Government has failed to prove that Leonard committed a drug trafficking crime, his conviction on Count Two for carrying a firearm during and in relation to a drug trafficking crime likewise must be reversed. *See, e.g.*, *United States v. Simpson*, 94 F.3d 1373, 1377 n.1 (10th Cir. 1996) (proof of the underlying drug trafficking offense is an essential element of a § 924(c) violation).

B.     *Did the Trial Court's Instructions to the Jury Regarding the § 924(c) Charge Constitute Reversible Error?*

Moore and Peterson also contend that the trial court erred in instructing the jury regarding the necessary elements to convict under 18 U.S.C. § 924(c), which makes it a crime to "use[] or carr[y]" a gun "during and in relation to any . . . drug trafficking crime." 18 U.S.C.A. § 924(c) (West Supp. 1997). Specifically, they argue that the trial court's instructions equating "carrying" with "possession" were an improper statement of the law, citing *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501 (1995), in support of their argument. We agree with the defendants that the district court erred in instructing the jury. Although the *Bailey* Court specifically limited its holding to the "use" prong of § 924(c), the decision strongly suggests that possession of a gun, without more, does not satisfy the "carry" prong:

> Had Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided. This obvious conclusion is supported by the frequent use of the term "possess" in the gun-crime

statutes to describe prohibited gun-related conduct. *See, e.g.*, §§ 922(g), 922(j), 922(k), 922(*o*)(1), 930(a), 930(b).

*Bailey*, 516 U.S. at 143, 116 S. Ct. at 506. In addition, we have held in a post-*Bailey* decision that "[t]o sustain a conviction under the 'carry' prong . . . the government must show actual transporting of the firearm during and in relation to the drug trafficking offense." *United States v. Chirinos*, 112 F.3d 1089, 1095 (11th Cir. 1997)*; accord United States v. Canady*, 126 F.3d 352, 358 (2d Cir. 1997); *Wilson v. United States*, 125 F.3d 1087, 1090 (7th Cir. 1997); *United States v. Hall*, 110 F.3d 1155, 1161 (5th Cir. 1997); *United States v. Mitchell*, 104 F.3d 649, 653 (4th Cir. 1997); *United States v. Ruth*, 100 F.3d 111, 113 (10th Cir. 1996); *United States v. Riascos-Suarez*, 73 F.3d 616, 623 (6th Cir. 1996). As interpreted both by us and by our sister circuits, the "carry" prong of § 924(c)(1) requires more than proof of mere possession; the government must prove that the defendant actually transported the firearm as well. Thus, the district court's instructions to the jury were an erroneous statement of the law.

However, a finding that the instructions were erroneous does not end our inquiry. Our holding in *United States v. Quinn*, 123 F.3d 1415 (11th Cir. 1997) applies to *"erroneous"* jury charges; such a charge entitles a defendant to a new trial on the count in question only "when a reasonable likelihood exists that the jury applied the instruction in an improper manner." *Id.* at 1428 (internal quotations

10

omitted).  Alternatively, *United States v. Rogers*, 94 F.3d 1519 (11th Cir. 1996), *cert. granted in part*, ___ U.S. ___, 117 S. Ct. 1841, *and dismissed as improvidently granted*, ___ U.S. ___, 118 S. Ct. 673 (1998), is the "framework to be used in appeals involving instructions *that omit an essential element of the offense.*"  *Id.* at 1526 (emphasis added).  The instructions at issue could be read to fall under either of these rules.  On one hand, the trial judge gave the jury an erroneous definition of carry, which would seem to render the instructions "erroneous," and therefore subject to analysis under *Quinn*.  Yet, as we have explained *supra*, "carrying" under the law of this circuit requires both possession and transportation.  The trial judge neglected to mention the requirement of transportation, in effect omitting an "element" of the offense and rendering the instructions susceptible to *Rogers* analysis.

The parties do not raise the issue of which rule to apply here, and indeed, we need not reach the issue, for the same result obtains under either rule.  In *Quinn* we held that the defendant was not entitled to reversal of his conviction, even though under *Bailey* the judge gave an improper charge to the jury, because "a properly instructed jury would have found Quinn guilty of violating § 924(c)(1) on the basis of the 'carrying' prong of the statute, evaluated in light of the evidence adduced." *Quinn*, 123 F.3d at 1429.  In the instant case, a properly instructed jury likewise would have convicted Moore and Peterson.  Following the instructions given by the district

11

court, the jury at the very least found beyond a reasonable doubt that the defendants actively or constructively possessed the pistol at issue during and in relation to a drug trafficking crime, or aided and abetted in such possession. Thus, the only element missing from the verdict was a finding of "actual transport[ation] of the firearm, . . . such as the defendant[s'] having carried the firearm . . . in a vehicle used for drug distribution." *Quinn*, 123 F.3d at 1426. The evidence of transportation with respect to Peterson is undisputed; he was found driving the automobile containing the Glock pistol. Had the jury been properly instructed, it certainly would have convicted Peterson of "carrying" the pistol, in light of the undisputed evidence of transportation. *Cf. United States v. Holland*, 116 F.3d 1353, 1359 n.4 (10th Cir. 1997) ("essential inquiry" is whether jury's verdict, in light of instructions given and evidence, is the "functional equivalent" of required findings for a "carry" conviction (citing other cases)). With respect to Moore, there was no evidence that he transported the pistol, that is, drove the vehicle containing it. However, the jury's verdict at the very least found that Moore had knowing possession, whether actual or constructive, of the pistol, and it was undisputed that he claimed to be the owner of the station wagon and was allowing Peterson to drive it, clearly furthering the transportation of the pistol. A properly instructed jury also would have convicted Moore, for aiding and abetting Peterson in commission of the offense.

12

Under *Rogers* an instruction that omits an element of the offense is harmless:

1) Where the infirm instruction pertained to a charge for which the defendant was acquitted (and not affecting other charges); 2) Where the omission related to an element of the crime that the defendant in any case admitted; [or] 3) Where the jury has necessarily found certain other predicate facts that are so closely related to the omitted element that no rational jury could find those facts without also finding the element.

*Rogers*, 94 F.3d at 1526 (citing *Carella v. California*, 491 U.S. 263, 270-71, 109 S. Ct. 2419, 2423-24 (1989) (Scalia, J. concurring). This rule is narrower than that in *Quinn*, but the instructions at issue here are nevertheless harmless under *Rogers*. Assuming that the jurors followed the trial judge's instructions to the letter, they necessarily had to find that Peterson possessed the pistol through his act of driving the car while knowing the pistol was contained therein. No rational jury could have found that Peterson drove the car, yet did not "transport" the pistol. Likewise, to find Moore guilty the jurors would have had to find that he owned the car, thereby aiding and abetting Peterson by providing the vehicle in which the pistol was carried. Thus, under either rule the improper "carry" instruction does not mandate reversal of either Moore or Peterson's conviction.

### III. CONCLUSION

For the reasons stated above, we REVERSE Leonard's convictions on Counts One, Two and Three of the indictment, and AFFIRM Moore and Peterson's convictions and sentences.

13

REVERSED IN PART; AFFIRMED IN PART.

DUBINA, Circuit Judge, concurring in part and dissenting in part:

While I agree with the majority's well-reasoned opinion insofar as it affirms the

convictions of defendants Moore and Peterson, I respectfully dissent concerning the

14

majority's reversal of Leonard's convictions and sentences on Counts I, II and III of the indictment. In my view, a reasonable jury could have found under the circumstances that Leonard, together with the other defendants, knowingly possessed a controlled substance with intent to distribute. The majority acknowledges that a jury could have inferred that Leonard knew the cocaine and gun were in the car. I disagree, however, with the majority's conclusion that "[t]he evidence is insufficient to show either that Leonard possessed the cocaine or the Glock pistol, or that he aided or abetted their possession."

Possession may be actual or constructive, and constructive possession "may be shared with others, and can be established by circumstantial or direct evidence." *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984). In this case, the jury could have inferred, based on circumstantial evidence, that Leonard shared constructive possession of the cocaine with Moore and Peterson. When asked by Deputy Sellers, Peterson stated that the defendants were traveling from Orlando. He later changed his story and said that they had come from Miami. In either case, the evidence indicated that the three defendants had been on a road trip from some location in central or south Florida. Both Moore and Leonard stated that they did not know where they had been in Florida because they had slept through the trip. Peterson, who was driving the car at the time Deputy Sellars pulled it over just north

15

of the Georgia-Florida border, claimed to have been asleep until the trio reached the state line.

Clearly, the car did not drive itself through the state of Florida. Considering that all of the defendants denied driving the car through Florida, a reasonable jury could have inferred that at some point during the journey, Leonard took a turn behind the wheel. This is sufficient circumstantial evidence of Leonard's constructive possession of the vehicle and the cocaine it contained. This evidence of possession, combined with evidence of Leonard's guilty knowledge, constitutes significantly more than "mere presence" in the vehicle. *See United States v. Stanley*, 24 F.3d 1314, 1320 (11th Cir. 1994) ("courts will affirm convictions when the defendant's presence in the car is combined with other evidence of guilt"). The same analysis demonstrates that there is sufficient evidence that Leonard transported the handgun. I do not think that we should reverse Leonard's convictions and sentences merely because he happened to be sitting in the back seat of the car at the time of the arrest. Accordingly, I would affirm Leonard's convictions and sentences in all respects.