UNITED STATES of America, Plaintiff-Appellee,

v.

Larry Lee Manassa MILLER, Defendant-Appellant.

No. 00-12586.

United States Court of Appeals,

Eleventh Circuit.

July 3, 2001.

Appeal from the United States District Court for the Southern District of Alabama.(No. 99-00144-CR-1-001-RV), Richard W. Vollmer, Jr., Judge.

Before BARKETT, HILL and KRAVITCH, Circuit Judges.

HILL, Circuit Judge:

Larry Lee Manassa Miller was convicted of two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).  He timely filed this appeal.

I.

On January 2, 1999, Larry Lee Manassa Miller, a convicted felon, was stopped by police officers for traffic violations.  Miller was alone in the car, which was registered in his name.  During this stop, the police officers learned that Miller's driver's license was suspended.  The officers arrested Miller for driving under a suspended license and impounded his car.  During an inventory search of the car, the officers discovered a loaded nine millimeter semiautomatic pistol under the driver's seat.

On May 27, 1999, the same officers that arrested Miller in January observed Miller driving alone in his car.  Aware that there was an outstanding warrant for Miller's arrest on an unrelated misdemeanor offense, the officers again pulled Miller over and arrested him.  As before, the officers impounded Miller's car and performed an inventory search.  This time the officers found a loaded .38-caliber revolver under the driver's seat and an unloaded short-barreled shotgun and ammunition in the trunk.

The government's case against Miller consisted primarily of the testimony of the two investigating officers that they twice arrested Miller and each time found a firearm in his car during the inventory search.  During the testimony of the first officer, the following exchange took place.

Q:     And was he read his Miranda rights?

A:     Yes he was.  He was read his Miranda rights and invoked his rights at the time.

Q:      And therefore, he did not make a statement?

A:      No, Sir. He was not asked any further questions in regards to the weapons or what he was being charged with.

These questions drew no objection from defense counsel.[1]

Later, during a direct examination of the second arresting officer, the prosecutor repeated this line of questioning, as follows:

Q:      And he was read his Miranda rights?

A:      Yes, he was.

Q:      And did he make a statement or did he decline to make a statement?

At this point, before an answer was given, defense counsel objected to the question and the district court sustained the objection.  Neither a mistrial nor any curative instruction was requested or given.

Miller did not take the stand or present any evidence.  In his closing argument, Miller's counsel argued that the government had failed to present any evidence that Miller knew the guns were in his car.  Miller was convicted on all counts.

On appeal, Miller argues that (1) the prosecutor's questions concerning his post-*Miranda* silence violated his right to due process, (2) the district court erred when it denied his motions to sever the counts charging possession of a firearm by a convicted felon from the remaining counts in the indictment, and (3) the government failed to present sufficient evidence of, and the district court failed to properly instruct the jury on, the *mens rea* element of the crime of possessing an unregistered firearm.  For the following reasons, we affirm Miller's conviction.

II.

A.      *The Alleged Doyle Violations.*

Since 1976, it has been well-settled that using the defendant's silence at the time of arrest and after receiving *Miranda* warnings in an effort to impeach him at trial violates the Due Process Clause and its guarantee against fundamental unfairness. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976);

---

[1]In the absence of an objection at trial, we may review only for plain error.  Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 730-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).  We find plain error where (1) there is an error;  (2) the error is plain;  (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless;  and (4) the error seriously affects the fairness, integrity or public reputation of a judicial proceeding. *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ("If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings").

*United States v. Stubbs,* 944 F.2d 828, 834 (11th Cir.1991). The Supreme Court made crystal clear in *Doyle* that for a prosecutor to call attention to the defendant's silence after arrest when he has been expressly warned that "anything he says can be used against him at trial" would be fundamentally unfair. 426 U.S. at 618, 96 S.Ct. 2240 (citing *United States v. Hale,* 422 U.S. 171, 182, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975)) ("Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial").

We have not hesitated to reverse a conviction which was tainted by such an improper comment on the defendant's silence at arrest. *United States v. Dodd,* 111 F.3d 867, 870 (11th Cir.1997). And yet, prosecutors continue to indulge themselves in this way. It is a practice which should end and which we shall continue to scrutinize with great care.[2]

In this case, however, it is not necessary for us to decide whether these questions were *Doyle* violations. Even if they were, we would conclude that they were harmless error. A *Doyle* violation is harmless if the error had no "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). For example, we have repeatedly held harmless a prosecutor's single reference to the defendant's post-*Miranda* silence if it occurs during a trial at which the government's evidence was otherwise overwhelming. *United States v. Gabay,* 923 F.2d 1536, 1541 (11th Cir.1991); *United States v. Ruz-Salazar,* 764 F.2d 1433, 1437 (11th Cir.1985); *Sullivan v. Alabama,* 666 F.2d 478, 485 (11th Cir.1982). This is especially so where the prosecutor makes no further attempt to "highlight" the defendant's exercise of *Miranda* rights either in questioning other witnesses or during closing argument. *See United States v. Gonzalez,* 921 F.2d 1530, 1549 (11th Cir.1991).

In this case, the questions at issue took only moments of the trial and one of the questions was not answered by the witness. The prosecutor did not focus on or emphasize the officers' testimony or the fact of Miller's silence at any point in the trial, including closing arguments. Since Miller did not testify at trial, his defense involved no exculpatory story with which his post-*Miranda* silence was compared. *See United States v. Tenorio,* 69 F.3d 1103, 1106 (11th Cir.1995) (finding error was not harmless where prosecutor's theory that the defendant's exculpatory story was inconsistent with his post-arrest silence was "the touchstone of the

---

[2]In *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the Supreme Court observed that even if a prosecutor's question does not constitute a *Doyle* violation, "the fact remains that the prosecutor attempted to violate the rule of *Doyle* by asking an improper question in the presence of the jury." Such prosecutorial misconduct may itself rise to the level of a due process violation. *Id.*

government's case-in-chief, its cross-examination of the defendant, and its closing argument during this trial of short duration"). While a curative instruction was neither requested nor given, the court instructed the jury at the start of the trial not to consider counsel's questions as evidence and that, if an objection was sustained and no answer was given, not to consider counsel's question as evidence. In addition, the court's general jury instructions highlighted the defendant's right to be silent and not testify.

In contrast to any minute potential for real prejudice to Miller as a result of the questions, the government's evidence of guilt was strong. Specifically, the government established that, on two separate occasions, Miller was driving alone in a car registered in his name and that, on each occasion, investigating officers discovered firearms in the car. This evidence supported the jury's inference that Miller knew of the firearms and their verdict that he is guilty of the offense charged. Under these circumstances, the prosecutor's ill-advised questions, if error, were harmless because they did not have any "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 623, 113 S.Ct. 1710.

B.        *Mens Rea Requirement Under 28 U.S.C. § 5861(d).*

Section 5861(d) makes it unlawful for any person to "possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." The term "firearm" is defined as, among other things, "a shotgun having a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(1). Although § 5861(d) contains no express *mens rea* requirement, the Supreme Court has held that the government must prove beyond a reasonable doubt that the defendant *knew* that the weapon he possessed had the characteristics that brought it within the statutory definition of a firearm. *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994).[3]

In this case, the characteristic which brought the shotgun within the statutory definition of a firearm was the length of its barrel. Miller contends that there was absolutely no evidence at trial which suggested that he knew that the shotgun he possessed had a barrel of less that 18 inches. He also claims that the district court failed to instruct the jury on this element of the offense. Finally, he argues that the prosecutor repeatedly misstated the law and suggested that "mere" possession satisfies the statute.

Although the government offered no direct evidence that Miller knew that the shotgun's barrel was shorter than 18 inches, there was ample circumstantial evidence from which the jury could reasonably infer

---

[3]There is no requirement under the statute that the defendant knew that his possession was unlawful, or that the firearm was unregistered. *United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

such knowledge. *See Staples,* 511 U.S. at 615-16, 114 S.Ct. 1793. First, the length of the barrel is a patently obvious characteristic, readily apparent to anyone, including Miller, who observes the gun. *Id.* at 615 n. 11, 114 S.Ct. 1793 ("knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon"). At trial, Agent Pasqualotto testified that the shotgun's barrel was fifteen-and-a-half inches long. The shotgun was admitted as evidence and published to the jury. This evidence permitted the jury to infer that Miller knew the barrel's length was under 18 inches. *See, e.g., United States v. Rith,* 164 F.3d 1323, 1337 (10th Cir.1999) (jury could infer that defendant knew shotgun's barrel length where the barrel was observably shorter than 18 inches); *United States v. Moore,* 97 F.3d 561, 564 (D.C.Cir.1996) ("[t]he jury could also have inferred that appellant knew—by observing the 13 1/16 inch weapon—that the rifle was shorter than sixteen inches"). The evidence of the required *mens rea* was sufficient.

Miller's claim that the jury instruction on the *mens rea* requirement tainted his conviction is also without merit. During the jury charge, the district court read Count Five of the indictment, which charged Miller with "knowingly" possessing an unregistered shotgun with a barrel length of 15-and-a-half inches. The district court instructed the jury that:

> The Defendant can be found guilty of the offense charged in Count Five only if the Government proves each of the following elements beyond a reasonable doubt: First, that the Defendant knowingly possessed a firearm having a barrel or barrels of less than 18 inches in length; and second, that the firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record.
>
> The Government must prove beyond a reasonable doubt that the firearm which the Defendant possessed was not registered in his name with the National Firearms Registration and Transfer Record. However, it is not necessary for the Government to prove that the Defendant knew that the firearm he possessed was not registered to him with the National Firearms Registration and Transfer Records, nor is it necessary for the Government to prove that the Defendant knew that the law required him to register the firearm.

Since Miller did not object to this instruction at trial, we review it only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 730-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under this standard, an appellate court has the discretion to notice a forfeited error only if the error was both plain and affected the defendant's substantial rights. Rule 52(b); *Olano,* 507 U.S. at 732, 113 S.Ct. 1770. The appellate court should exercise its discretion to correct the error only if it seriously affected the fairness, integrity or public reputation of a judicial proceeding. *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

In this case, although the instruction arguably was error, *see United States v. Rogers,* 94 F.3d 1519, 1522-23 (11th Cir.1996),[4] we conclude that it was not plain error. Although the instruction may have been ambiguous as to what the jury must find that Miller knew,[5] there is no reasonable doubt that the jury did find, or would have found had they been more specifically instructed, that Miller knew the shotgun had a sawed-off barrel. First, the jury was instructed that they must find that the barrel of the shotgun was less than 18 inches long. Second, this characteristic of the firearm was, as we noted above, readily apparent to all, including Miller.[6] The jury, then, necessarily found that Miller knew the shotgun's barrel was less than 18 inches long. Where the jury has found certain other predicate facts which are so closely related to the omitted element that no rational jury could find those facts without also finding the element, a failure to instruct on that element is not plain error. *Rogers,* 94 F.3d at 1526.[7] *See also United States v. Leonard,* 138 F.3d 906, 910-11 (11th Cir.1998) (error harmless if a properly instructed jury would have reached the same result).

Reviewing the challenged instruction in the context of the totality of the instructions and of the trial itself, there is no doubt that the jury made the required finding, and that any error was, therefore, not plain.

---

[4]In *Rogers,* the jury was instructed that they must find that "the Defendant knowingly possessed the item as charged [and] that such item was a 'firearm' as defined above." 94 F.3d at 1522. We held that this instruction was inadequate to "inform the jury that the Government was obligated to establish [Rogers] knew the characteristics of the weapons at issue that subjected them to the Act's regulatory scheme," but that the error was harmless in that case. 94 F.3d at 1523. After accepting *certiorari* to determine whether such error can be harmless, a plurality of the Supreme Court reversed our decision, holding that the instruction was adequate under *Staples. Rogers v. United States,* 522 U.S. 252, 256-57, 118 S.Ct. 673, 139 L.Ed.2d 686 (1998)(*certiorari dismissed as improvidently granted* ). Nevertheless, we remain bound by the panel's decision that the jury instruction did not adequately instruct the jury on an element of the offense. *See Foster v. Bd. of School Comm'rs,* 872 F.2d 1563, 1569-70 n. 8 (11th Cir.1989) (plurality opinion from Supreme Court not binding; prior panel decision is binding precedent). *But see United States v. Hall,* 171 F.3d 1133, 1151 (8th Cir.1999) (approving instruction which requires jury to find the defendant knew that he possessed a firearm and that the firearm had the characteristics which bring it within the statutory prohibition).

[5]See Justice Kennedy's dissent in the Supreme Court's review of our decision in *Rogers.* 522 U.S. at 260, 118 S.Ct. 673.

[6]There is some authority for the proposition that the government need not prove and the court need not instruct that the defendant knew the characteristic of the firearm which brought it within the statutory proscription where that characteristic is so readily apparent that the weapon itself is "quasi-suspect." *United States v. Barr,* 32 F.3d 1320, 1323,24 (8th Cir.1994). In *Staples,* the Supreme Court held that where the characteristics which require the firearm to be registered are not open and obvious the government must prove that the defendant knew that the firearm he possessed had those characteristics. 511 U.S. at 611-12, 114 S.Ct. 1793.

[7]Although *Rogers* was a "harmless error" case, plain error analysis is the same kind of inquiry as harmless error analysis, with one important difference: "it is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano,* 507 U.S. at 734-35, 113 S.Ct. 1770; *United States v. Fern,* 155 F.3d 1318, 1327 (11th Cir.1998).

*See United States v. Miller,* 22 F.3d 1075, 1079 (11th Cir.1994) (challenged instruction must be considered in the context of the totality of the jury charge). When considered in the totality of the charge as a whole and the evidence presented against Miller, the instruction was not so erroneous that it affected the fairness, integrity, or public reputation of the trial. *See United States v. Duncan,* 855 F.2d 1528, 1532 (11th Cir.1988). On the contrary, to reverse the jury's verdict under the circumstances of this case would itself "bestir[ ] the public to ridicule" the judicial process. *United States v. Swatzie,* 228 F.3d 1278, 1284 (11th Cir.2000) (quoting *Johnson v. United States,* 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).[8]

III.

Finally, Miller argues that the district court abused its discretion by denying his motions to sever the unregistered firearm possession count from the felon-in-possession counts. Miller contends that the introduction of his prior felony conviction was prejudicial and invited the jury to consider his status as a felon when determining his guilt or innocence on the unregistered firearm possession count.

Miller concedes, however, that this prejudice was mitigated by the fact that at trial he stipulated to his conviction. Miller's general allegation of some prejudice is insufficient to meet the defendant's heavy

---

[8]Nor do we find any error in the prosecutor's representations of the law. In the example quoted by Miller, which occurred during the opening statement, the prosecutor stated that "mere possession of a sawed-off shotgun is a crime." However, when read in context, it is clear that the prosecutor began this statement by explaining that § 5861(d) prohibits a person from possessing certain kinds of firearms, including sawed-off shotguns, unless they are registered, as follows:

> The fifth count, Count Five, is a violation of 26, United States Code, 5861(d). It's kind if a mouthful, but what that means is there are certain firearms that by their very nature people cannot possess unless they are registered and you send in a form and you register and you're allowed to possess the firearms. That would be a machine gun, hand grenades, bombs, and I[sic] the evidence will show, sawed-off shotguns, because by the very nature of a sawed-off shotgun, it has no sporting purpose, and thereby the mere possession of a sawed-off shotgun is a crime.

> In addition, during closing argument, the prosecutor twice referred to the shotgun as an "illegal weapon," but also argued that the evidence showed that the shotgun was not registered by Miller. Finally, Miller cites an instance in which Miller claims the court instructed the jury that the shotgun was an illegal weapon by virtue of its barrel length, as follows:

> All right. Ladies and gentlemen, insofar as the question as to whether or not this gun is an illegal weapon, the fact that it is 15-and-a-half inches is a violation of the law. But the fact that whether or not this Defendant knew it was registered to him or was not registered, any testimony on that should be disregarded by you.

> This statement occurred following a hearsay objection by defense counsel to the testimony of ATF special agent Pasqualotto that the shotgun was not registered in Miller's name. The court sustained this objection and permitted the government to introduce the ATF form certifying that the shotgun was not registered to Miller.

burden of demonstrating that he suffered "specific and compelling prejudice as a result of the denial of severance." *See United States v. Simon,* 839 F.2d 1461, 1472 (11th Cir.1988).

## IV.

The prosecutor's questions, even if error, were harmless error. The evidence that Miller knew he possessed a firearm with a barrel less than 18 inches long was sufficient and the court's instruction on this element, if error, was not plain. Finding no other error in the trial, we AFFIRM Miller's convictions.