[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15204

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00373-CR-B-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO BUSTOS,
a.k.a. Mario Busto,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 21, 2006)**

Before BIRCH, CARNES and BRUNETTI[*], Circuit Judges.

BIRCH, Circuit Judge:

---

[*] Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Mario Bustos appeals his conviction for carrying a firearm during and in relation to a drug trafficking crime. We find that the evidence was sufficient to sustain his conviction and that the indictment was not constructively amended by the jury instruction. We, therefore, AFFIRM.

## I. BACKGROUND

Bustos was indicted for possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One), and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). He pled not guilty and was tried before a jury.

At trial, the testimony revealed that an undercover officer and a confidential informant ("CI") met with Bustos in a hotel room in order to purchase drugs. The undercover officer testified that, before the transaction took place, Bustos offered him a bottled soft drink "that had a pop top." R5 at 86. Bustos reached into the drawer of a nightstand, pulled out a handgun and unloaded it. Id. at 86, 99. He then used the trigger guard of the gun to remove the bottle cap, placed the gun on the dresser, and handed the soft drink to the officer. Bustos then sold the officer and the CI marijuana.

2

A police officer testified that, in drug deals, firearms were used for protection or to "rip off" others. Id. at 116-17. A translator with the police department testified that, after his arrest, Bustos gave a statement to police. In that statement, Bustos stated that someone named Juan or Jose offered to pay for his hotel room if he would keep some marijuana. Bustos told the police that, when he was given the marijuana, he was also given a gun for his protection. Id. at 129.

At the close of the government's evidence, Bustos moved for a judgment of acquittal, which the district court denied. He then changed his plea to guilty as to Count One. Bustos took the stand in his own defense and testified that Juan, the man who offered to put him up in a hotel room in exchange for Bustos taking care of his marijuana, brought the gun to the hotel room. Id. at 151. Bustos further testified that the gun was unloaded on the evening of the arrest. Id. at 151-52. Bustos explained that he removed the unloaded gun from the nightstand and used it to open the soft drinks for the CI and the undercover officer. Id. at 156-57. He stated that he never used the gun for anything other than opening soft drinks and that the gun never left the hotel room. On cross-examination, Bustos explained that Juan told him that the gun could be useful for defending himself, but Bustos told Juan that he did not need the gun.

Bustos renewed his motion for acquittal, which the district court denied.

The district court then instructed the jury that the government had to prove the

following elements beyond a reasonable doubt for Count Two:

First:    That the defendant committed the drug trafficking crime
          charged in Count One of the Indictment;
Second:  That the defendant carried a firearm;
Third:    That the carrying of the firearm was during and in relation to
          the crime charged in Count One of the Indictment; and
Fourth:   That the defendant carried the firearm knowingly.

R1-30 at 9.  The court then stated that:

    The phrase "during and in relation to" the commission of an
offense means that there must be a connection between the defendant,
the firearm and the drug trafficking crime so that the firearm
facilitated the crime or had the potential of facilitating the crime by
serving some important function or purpose of the criminal activity
such as enforcement or protection.
    To carry a firearm means either to have a firearm on or around
one's person or to transport, convey or possess a firearm in such a
way that it is available for immediate use if one so desires.
    . . . It is enough that a firearm was present at the drug
trafficking scene, that the firearm could have been used to protect or
facilitate the operation, and the presence of the firearm was in some
way connected with the drug trafficking offense.
    Mere presence of a firearm at the scene is not enough to find
that defendant carried the firearm during and in relation to a drug
trafficking crime, because the firearm's presence may be coincidental
or entirely unrelated to the underlying crime.  Some factors that may
help in determining whether defendant carried the firearm during and
in relation to a drug trafficking offense include, but are not limited to:
    a. the type of drug activity that is being conducted;
    b. the accessibility of the firearm;
    c. the type of weapon;
    d. proximity to drugs or drug profits; and

4

e. the time and circumstances under which the gun is
found.

. . . .

A person who has direct physical control of something on or
around his person is then in actual possession of it.

Id. at 10-12 (emphasis in orginal).

During deliberations, the jury submitted several questions to the district court judge. In one of the questions, the jurors requested "clarification of the . . . (term) mere presence of a firearm." R1-24; R6 at 229-30. The district court answered the question by re-reading a portion of the jury instructions and provided examples of situations were "a firearm's presence might be coincidental or entirely unrelated to the underlying offense" such as "where a drug trafficking crime takes place in a home with a display case of hunting rifles . . . or in a gun shop." Id. at 230-31. The jury then asked "Does how he used the firearm determine how we should make our judg[]ment or do we base it on possession alon[e]?" R1-25. The court initially responded that "it's the purpose or the reason why the firearm was in there. It's not actually how he used it." R6 at 234-35. The district court explained that a defendant could be found guilty of carrying a firearm during a drug trafficking offense "even if the gun [was] never seen" or was never taken out of a car, if the defendant had carried the gun in the car with him and if the jury believed

5

that the gun was there to protect the drugs or money.  Id. at 235.  The district court

then expanded the answer as follows:

> The firearm must have some purpose or effect with respect to the drug trafficking crime.  It's presence or involvement cannot be the result of accident or coincidence.  The gun at least must facilitate or have the potential of facilitating the drug trafficking offense.
>
> You should focus on the purpose of the gun being in the room.  For example, an armed bank robber who carries his gun during the commission of the bank robbery and uses his gun to open a soda drink while the bank teller is gathering the loot has used the gun in a non-robbery fashion at some point in time during the robbery.  The temporary, non-robbery use of the gun under the law does not mean that the robber did not carry the gun in a crime of violence.
>
> There are four elements to Count Two, and I am going to read them to you now. . . .
>
>     . . . .
>
> Of course, element one is established.  If you find beyond a reasonable doubt that elements two and four have been established, two being that the defendant carried the firearm and four that he carried the firearm knowingly, and if you find beyond a reasonable doubt that the gun was there to provide protection for the [drugs], that is to avoid the drugs being ripped off or to provide protection for the money from drug deals, then you may find that the firearm was carried during and in relation to the crime charged in Count One, even though the only use of the gun, according to the testimony, was for the defendant to open a soda can.

Id. at 244-46.  Neither the government nor Bustos objected to this response.

The jury found Bustos guilty of Count Two.  Bustos filed a motion for new

trial or, in the alternative, for a judgment of acquittal based on the district court's

instruction to the jury as to "possession" of a firearm and insufficient evidence that

he knowingly carried the gun.  The district court denied the motion, finding that

6

the instructions taken as a whole accurately reflected the law and conformed to our proposed jury instructions.  The court further found that Bustos's handling of the gun supported the jury's verdict that he carried the firearm.  The district court then sentenced Bustos to serve consecutive prison terms of 15 months on Count One and 60 months on Count Two.

Bustos raises two arguments on appeal.  First, he contends that the evidence was insufficient to support a guilty verdict for carrying a firearm during and in relation to a drug trafficking offense.  Second, he argues that the district court erred by constructively amending the indictment when it instructed the jury that finding that Bustos in possession of the firearm was sufficient to find him guilty of carrying the firearm.

## II.  DISCUSSION

### A. Sufficiency of the Evidence

Bustos argues that the evidence that he merely opened the soft drink bottle was insufficient to show that he "carried" a firearm during the commission of a drug trafficking offense because there was no evidence that he transported or moved the weapon onto the premises, carried it on his person, or used it in relation to the drug offense.

7

We review sufficiency of the evidence <u>de</u> <u>novo</u> but "view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." <u>United States v. Martinez</u>, 83 F.3d 371, 373-74 (11th Cir. 1996) (internal citation omitted). We review the denial of a motion for new trial for abuse of discretion. <u>United States v. Anderson</u>, 326 F.3d 1319, 1326 (11th Cir. 2003).

"[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm" shall be sentenced to a minimum of term of imprisonment for five years. 18 U.S.C. § 924(c)(1)(A)(i). Because the word "carry" inherently involves "some degree of physical transportation or movement," "we consistently have held that the government must show some actual transporting of the firearm during and in relation to the offense" for a "carrying" conviction under § 924(c). <u>United States v. Mount</u>, 161 F.3d 675, 679 (11th Cir. 1998). "[T]he discovery of an unloaded firearm near drugs in a home where drugs were sold is, standing alone," insufficient to support a § 924(c) conviction for carrying a firearm. <u>Id.</u> at 680. We observed that our sister circuits have "sustained 'carry' convictions only where there was some evidence suggesting that the defendant had actually *moved* the firearm in relation to his drug offenses." <u>Id.</u> The carrying element of § 924(c) is "clearly indicated" where the

8

defendant "carried a shoe-box that contained both the gun and the drugs *in his hands*." United States v. Timmons, 283 F.3d 1246, 1250 (11th Cir. 2002).

In this case, Bustos actually moved the weapon during a drug transaction. See Mount, 161 F.3d at 679. Because Bustos pulled a gun out of a drawer and handled it during the drug transaction and because there was testimony that the gun was there to provide protection during the transaction, the evidence was sufficient to support the jury's verdict finding that Bustos had "carried" the firearm during and in relation to the drug transaction.

B. Constructive Amendment

We review "whether the district court misstated the law when instructing the jury or misled the jury to the prejudice of the defendant" de novo. Anderson, 326 F.3d at 1326. District courts are generally "granted broad discretion to formulate jury instructions as long as the jury charge as a whole correctly applies the law and states the facts." Anderson, 326 F.3d at 1330 (citation omitted). We "will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in a substantial way as to violate due process." Id. at 1331 (citation and internal punctuation omitted).

9

An indictment is constructively amended when the trial evidence and jury instructions "so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the . . . indictment." United States v. Davis, 679 F.2d 845, 851 (11th Cir. 1982) (citation and internal punctuation omitted). A constructive amendment requires reversal. Id. "A variance results when the terms of the indictment are unaltered but the evidence offered at trial proves facts materially different from those alleged in the indictment. A variance mandates reversal only when it substantially prejudiced a defendant's rights." Id. (internal citations omitted). A finding that the district court erred in instructing the jury, however, is not enough to warrant a reversal; a defendant is entitled to a new trial only if we find that "a reasonable likelihood exists that the jury applied the [erroneous] instruction in an improper manner." United States v. Leonard, 138 F.3d 906, 910 (11th Cir. 1998).

The indictment charged Bustos with "carrying" a firearm rather than possession of a firearm under § 924(c)(1)(A). The district court's original instructions stated that "[t]o carry a firearm means either to have a firearm on one's person or to transport, convey or possess a firearm in such a way that it is available for immediate use," and then provided a definition of possession. See R1-30 at 10 (emphasis in original). The evidence was sufficient to show that Bustos "carried"

10

the firearm by handling it during the drug transaction. Consequently, neither a constructive amendment nor variance occurred because the trial evidence did not "modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the indictment" or prove "facts materially different from those alleged in the indictment." See Davis, 679 F.2d at 851.

Further, the district court's jury instructions as a whole correctly applied the law and stated the facts–even though the term "possess" was included in the definition of "carry"–and the district court used the term "carry" rather than "possess" and reiterated the elements of the crime, including that the defendant carried the firearm, in its answer to the jury's question. Further, the district court stated that mere presence of the firearm at the scene was not enough, and the "armed bank robber" illustration correctly stated the law by explaining that the gun must have been knowingly carried during and in relation to the crime charged. The district court, therefore, did not abuse its discretion in denying Bustos's motion for new trial based on constructive amendment of the indictment.

### III. CONCLUSION

The evidence was sufficient to support the jury's verdict on Count Two because Bustos pulled a pistol out of a drawer and handled it during the drug transaction. The district court did not constructively amend the indictment by

11

including the term "possession" in its instructions to the jury because the instructions as a whole correctly applied the law and stated the facts. We, therefore, affirm.

**AFFIRMED.**