[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Dec. 09, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16990
Non-Argument Calendar

_____

D. C. Docket No. 08-00181-CR-T-17MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LANCE BOUVIRA DREW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 9, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Lance Drew ("Drew") appeals his conviction and 420-month sentence for

conspiring to possess with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. Drew argues: first, that the evidence presented at trial was insufficient to convict him of conspiring to possess with intent to distribute cocaine; second, that the evidence against him was insufficient to convict him of possessing a firearm in furtherance of drug trafficking; third, that because the court reporter did not make a verbatim record of evidence admitted at trial he should receive a new trial; fourth, that his 420-month sentence was substantively unreasonable; and fifth, that we should adopt the Second Circuit's ruling in United States v. Williams, 558 F.3d 166 (2d Cir. 2009) and find him exempt from the 60-month mandatory minimum consecutive sentence imposed by the district court. After reviewing the record, we find no error and thus AFFIRM the judgment of the district court and Drew's sentence.

## I. BACKGROUND

A federal grand jury returned a superseding indictment against Drew for conspiring to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii) (Count One), possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two), and being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1) (Count Four). R1-44. Count Two in particular alleged that Drew and his co-conspirators, Andre Chapman ("Chapman") and Reginald Hearns ("Hearns"), aided and abetted one another in the possession of the firearms in furtherance of the conspiracy charged in Count One. Id.

Prior to trial, Drew stipulated that he was a convicted felon. R1-63. At trial, the government called Richard Zayas, a special agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), who testified as follows. R4 at 61-62. In March 2008, a confidential informant notified Zayas that Charleston Randolph ("Randolph") was involved in armed robberies of narcotics. Id. at 71. Shortly thereafter, Zayas, acting undercover as a disgruntled narcotics courier, met with Randolph. Id. at 72-73. Zayas told Randolph about a stash house that always held 22 to 39 kilograms of cocaine. Id. at 73. Zayas asked Randolph if he knew anyone who could help him rob the stash house. Id. at 74. Zayas and Randolph agreed to meet later so Zayas could meet Randolph's associates. Id.

Although that meeting did not occur, Zayas later met with Randolph and two of his associates. Id. at 74-76. Zayas discussed the potential robbery with Randolph's associates. Id. at 76. After the meeting, Randolph informed Zayas that his associates were hesitant about the robbery, and Zayas ultimately met with another associate of Randolph, Taius Davis ("Davis"). Id. at 76-80. Davis told

3

Zayas that, after the robbery, he (Davis) would be responsible for selling the stolen cocaine on the street. Id. at 104. Zayas told Davis that Davis was responsible for planning the robbery, including providing firearms and determining the number of people needed. Id. at 105. Zayas tried to impress upon Davis that the robbery would be dangerous. Id. at 106. Davis assured Zayas that he had people ready to convert the cocaine into crack cocaine, and there would be no problem selling it. Id. at 113.

Davis ultimately decided to do the robbery, and he and Zayas agreed to meet the next day at a gas station. Id. at 123-24. When Davis met Zayas, he was accompanied by Drew and one other crew member, Hearns. Id. at 128. Drew attempted to confirm with Zayas that there was one gun at the stash house, but Zayas would not confirm the number of guns. Id. at 144. Zayas and Drew discussed the amount of cocaine in the stash house, and Drew agreed that they would evenly split the stolen cocaine. Exh. Fol. 1; Gov. Exh. 6B at 1. Davis told Zayas that the crew had guns, but needed to get a fourth person. R4 at 149-50. Zayas agreed to wait about forty minutes while the crew members went to pick up the fourth man. Id. at 150.

When the crew returned with a fourth member, Chapman, Zayas confirmed that the men wanted to go forward with the robbery. Id. at 151-54. Zayas again

4

confirmed with Drew that the men were planning to evenly split the stolen cocaine. Exh. Fol. 1; Gov. Exh. 6C at 2. Zayas told the men that he rented a warehouse for them to deposit his share of the robbery. R4 at 160. The men left the gas station, and followed Zayas to the warehouse. Id. at 162. After the men arrived at the warehouse facility, they were arrested. Id. at 164-65.

On cross-examination, Zayas confirmed that Drew's fingerprints were not found on any firearms. Id. at 197. During his meeting with the crew at the gas station, Zayas never saw any guns in the crew's car. Id. at 198. Zayas further confirmed that no stash house existed. Id. at 210. According to Zayas, by showing up at the gas station armed, the men indicated they were willing to go through with the robbery. Id. at 210-11.

The government then called ATF Special Agent Christopher Felski who testified as follows. Id. at 234-36. After the crew members were arrested, Felski helped recover three handguns and ammunition from the crew's car. Id. at 246. One of the guns was found on the floorboard behind the driver's seat, where Drew had been sitting. Id. at 246-47. Two other guns were found to Drew's right on the car's backseat floor between Drew and another crew member, Hearns. Id. at 247-53; see id. at 128-29, 151.

The government called ATF Special Agent Walton Lanier who testified as follows. R5 at 52, 54. After Drew was arrested, Agent Lanier interviewed him. Id. at 54-55. Although Lanier did not record the interview, he was accompanied by another ATF agent. Id. at 60. Drew told Lanier that he expected to receive about $5,000 for his role in the robbery. Id. at 65. Drew was aware of the firearms in the crew's car. Id. at 65-66. Drew confirmed that he had planned to commit an armed robbery of the stash house. Id. at 71, 78. Drew informed Lanier that, the day before his arrest, he received a text message with a picture of the gun or guns. Id. at 71. Drew also said that he may have touched one, if not all, of the guns at some point. Id.

At the close of the government's case, Drew moved for a judgment of acquittal. Id. at 120. Drew argued that the government never proved he was part of a conspiracy. Id. at 128-29. Drew further argued that, when he tried to back away from the warehouse at the time of the arrest, he abandoned the conspiracy. Id. at 130. According to Drew, the government never rebutted his attempts to abandon the conspiracy. Id. Drew further contended that the government never proved that he constructively possessed a firearm. Id. The court denied Drew's motion. Id. at 132.

Drew offered no evidence in his defense, and again moved for a judgment of acquittal. R6 at 11, 18. Drew contended that he conspired to commit robbery, with which he had not been charged, and that the government never presented any evidence that he conspired to distribute cocaine. Id. at 18. According to Drew, he was set to receive $5,000 for his involvement in the robbery, which was inconsistent with the amount of cocaine being stolen and distributed. Id. at 19. Drew further argued that, because he never participated in a drug trafficking crime, he should be acquitted of Count Two. Id. at 20. The government responded that Drew conspired to steal a trafficking quantity of cocaine. Id. at 23. In response, Drew reiterated that he planned to commit robbery, but never to distribute cocaine. Id. at 24. The court again denied Drew's motion. Id. at 25-26.

With respect to Count Two of the indictment, the jury was charged that a defendant could be held liable for actual or constructive possession of the firearm and for the acts of his co-conspirators. Id. at 149-53. The jury found Drew guilty of Counts One, Two, and Four. R1-111.

After the jury returned its verdict, Drew again moved for a judgment of acquittal. R1-121. Drew reiterated his argument that the evidence did not support a conviction for conspiring to possess with intent to distribute cocaine. Id. at 3-6. According to Drew, only Davis discussed distribution with Agent Zayas. Id. at 3.

7

Next, Drew argued that he never constructively possessed a firearm. Id. at 6-7.

Drew contended that, at the time of his arrest, he was not aware there were firearms

in the car. Id. at 7. Lastly, Drew argued that, even if he did possess a firearm, it

was in furtherance of a conspiracy to commit robbery rather than distribute drugs.

Id. at 8. According to Drew, the government did not present evidence

demonstrating how the gun advanced the alleged conspiracy to distribute drugs.

Id.

In response, the government incorporated the arguments it made at trial in

opposition to Drew's original motion for judgment of acquittal. R1-125 at 3. The

government further argued that the evidence established that Drew planned to rob a

cocaine stash house and distribute the proceeds. Id. at 3-5. The government

emphasized that the robbery involved a trafficking amount of cocaine. Id. at 4.

The government contended that the evidence demonstrated that the crew members

planned to divide the stolen cocaine and distribute it. Id. at 4-5. Next, the

government argued that Drew, in his post-arrest statement, admitted knowing about

the firearms in the car. Id. at 5-6. The government further argued that the

evidence showed the crew intended to use the firearms in the robbery. Id. at 7.

The court denied Drew's motion. R1-148 at 6. The court noted that the

government presented evidence that Drew and the other crew members discussed

8

plans to steal and distribute cocaine. Id. at 3. The court stated that evidence presented showed Drew and Zayas had discussed guns, the amount of cocaine in the stash house, and the manner of removing the cocaine. Id. The court further noted that, in his post-arrest statement, Drew confirmed that he conspired to commit armed robbery and knew about the guns in the crew's car. Id. Lastly, the court noted that the robbery conspiracy involved a trafficking quantity of cocaine. Id. at 4.

Next, the court addressed whether Drew possessed a firearm. Id. at 4. According to the court, government evidence established that, in the crew's car, there was a firearm at Drew's feet. Id. at 4-5. Additionally, the evidence showed that Drew knew of the guns, and planned to use one of them in the robbery. Id. at 5. Lastly, the court determined that the evidence showed that Drew possessed the gun in furtherance of a drug trafficking crime, because he and the other crew members procured the guns to use in the robbery of a cocaine stash house. Id. at 5-6.

In preparing the presentence investigation report (PSI), the probation officer calculated a base offense level of 34 pursuant to U.S.S.G. § 2D1.1(a)(3). R8 at 34. Based on two qualifying prior convictions, the probation officer characterized Drew as a career offender pursuant to § 4B1.1, and reset his base offense level to

37. Id. at 28-29. Because Count Two, violation of 18 U.S.C. § 924(c), mandates a consecutive term of imprisonment, the probation officer excluded it in calculating Drew's offense level. Based on a total offense level of 37, and a criminal history category of VI, Drew's guideline imprisonment range was 360 months to life followed by sixty months of imprisonment as to Count Two. Id.

At sentencing, Drew argued that his career criminal enhancement over-represented the nature of his prior convictions. R8 at 19-21. Drew noted that he only went to prison on one of his qualifying convictions after he violated the terms of his probation. Id. at 21. Drew then argued that the convictions listed in his criminal history sections only served to scandalize him. Id. at 27. The court overruled all of Drew's objections to the PSI. Id. at 28.

After the court adopted the PSI's findings and calculations, Drew requested a sentence of fourteen to seventeen and a half years of imprisonment pursuant to 18 U.S.C § 3553. Id. at 28, 30. Drew re-emphasized that his guideline range over-represented his criminal history. Id. at 31. According to Drew, his prior offenses were not the type that formed the basis for a life sentence. Id. at 31-32. Drew noted that his past drug offense only involved six and a half grams of cocaine. Id. at 32. Drew argued he was less culpable than his co-defendants, whose guideline ranges were lower than his. Id. at 34-36. Drew explained that he had four

children, and if given a shorter sentence, would like to be involved in their lives. Id. at 39.

Next, Drew's grandmother spoke on his behalf. Id. at 43. Drew's grandmother stated that Drew was a good-hearted person who loved his girlfriend and their children. Id. at 44. According to her, Drew struggled with marijuana addiction and would benefit from drug treatment. Id. at 45. Drew then promised the court that in the future he would not make more mistakes. Id.

After considering statements of the parties, the PSI, and the § 3553 factors, the court sentenced Drew to 420 months of imprisonment on Count One and 120 months of imprisonment on Count Four, to run concurrently. Id. at 58-59. The court sentenced Drew to an additional sixty months of imprisonment on Count Two, to run consecutively. Id. at 59.

On appeal, Drew raises five issues. First, Drew argues that the evidence submitted at trial was insufficient to convict him of conspiracy to possess with intent to distribute cocaine. Second, Drew argues that the government failed to present evidence sufficient to support his conviction on Count Two, the firearms charge. Third, Drew argues that the court reporter's failure to transcribe the audio recordings played at trial and admitted into evidence entitles him to a new trial. Fourth, Drew argues that the district court imposed a substantively unreasonable

sentence and that the case should be remanded for re-sentencing.  Fifth, Drew argues that this court should adopt the Second Circuit's ruling in United States v. Williams, 558 F.3d 166 (2d Cir. 2009) and find him exempt from the 60-month mandatory minimum consecutive sentence imposed by the district court for Count Two because the longer mandatory minimum sentence for Count One is part of the same operative facts as Count Two.

**II. DISCUSSION**

A. Evidence of Conspiracy

"Sufficiency of the evidence is a question of law that we review de novo." United States v. Gupta, 463 F.3d 1182, 1193 (11th Cir. 2006).  In reviewing the sufficiency of the evidence, we consider "the evidence in the light most favorable to the government."  United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005) (citation omitted) (per curiam).  We also make all reasonable inferences and credibility choices in favor of the government and the jury's verdict.  Id.  "We must affirm . . . unless, under no reasonable construction of the evidence, could the jury have found the [defendant] guilty beyond a reasonable doubt."  Id.  "The evidence need not exclude every hypothesis of innocence or be completely inconsistent with every conclusion other than guilt because a jury may select among constructions of the evidence."  United States v. Bailey, 123 F.3d 1381,

12

1391 (11th Cir. 1997).

To support a conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine under 21 U.S.C. § 846, the government must establish beyond a reasonable doubt that (1) a conspiracy existed, (2) the defendant had knowledge of it, and (3) he voluntarily joined it. United States v. Thompson, 422 F.3d 1285, 1290 (11th Cir. 2005). "The existence of an agreement in a conspiracy case is rarely proven by direct evidence that the conspirators formally entered or reached an agreement . . . . The more common method of proving an agreement is through circumstantial evidence." United States v. Glinton, 154 F.3d 1245, 1258 (11th Cir. 1998) (quotation marks and citation omitted). "A defendant's knowing participation in a conspiracy may be established through proof of surrounding circumstances such as acts committed by the defendant which furthered the purpose of the conspiracy." United States v. Bain, 736 F.2d 1480, 1485 (11th Cir. 1984).

Drew contends that the evidence shows only that he conspired to commit a robbery. Although Drew never mentioned what he was planning to do with his share of the cocaine, it was reasonable for the jury to find that he planned to distribute and sell it. First, the evidence showed that Drew knew the amount of cocaine in the stash house and agreed to split the stolen cocaine five ways.

13

Second, after his arrest, Drew confirmed to Agent Lanier that he planned to help rob the stash house to get the cocaine. Lastly, Davis, one of Drew's co-conspirators, confirmed to Zayas that there would be no problem with distributing and selling the cocaine after it was stolen. Robbery was the first step in the conspiracy to possess, distribute, and sell the cocaine. Under these circumstances, a reasonable jury could have concluded that Drew conspired to distribute and sell his share of the stolen cocaine and / or aide his co-conspirators in the same. As such, the district court did not err when it denied Drew's motion for a judgment of acquittal on the drug conspiracy count.

B. Evidence Supporting Firearms Charge

To convict under 18 U.S.C. § 924(c)(1)(A), a jury must find that a defendant used or carried a firearm in relation to a drug trafficking crime, or possessed a firearm in furtherance of a drug trafficking crime. See 18 U.S.C. § 924(c)(1)(A). "The 'in furtherance' element requires proof that 'the firearm helped, furthered, promoted, or advanced the drug trafficking.'" United States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008) (quoting United States v. Timmons, 283 F.3d 1246, 1252 (11th Cir. 2002)). Thus, there must be "some nexus between the firearm and the drug selling operation." Timmons, 283 F.3d at 1253 (quotation marks, alteration, and citation omitted).

14

The government may prove "possession" by showing either actual or constructive possession. United States v. Leonard, 138 F.3d 906, 909 (11th Cir. 1998). "Constructive possession exists when a defendant has ownership, dominion, or control over an object itself or control over the premises . . . in which the object is concealed." Id. The defendant "must have both the intent and the power to exercise dominion and control over the firearm." United States v. Pedro, 999 F.2d 497, 500 (11th Cir. 1993) (quotation marks, alteration, and citation omitted). The "defendant must, in fact, know of the firearm's existence in order to exercise dominion and control over it," but "a defendant's mere presence in the area of an object or awareness of its location is not sufficient to establish possession." Id. at 500-01 (quotations omitted). "The defendant may exercise that dominion and control either directly or through others." United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004) (per curiam).

Drew admitted that he knew there were firearms in the car. The evidence showed that Drew was aware the planned robbery would be dangerous, and that he discussed guns with Zayas. After Drew's arrest, officers found one gun on the floor of the car, next to Drew's feet, and a second gun within Drew's reach. Lastly, Drew admitted that the day before he was arrested he received pictures of the gun or guns on his cell phone and that he may have touched one if not all the

15

guns.

Under these circumstances, it was reasonable for the jury to conclude that Drew, as a participant in a planned drug-robbery, knew of the firearms' existence, was within reach of at least one of the guns, and possessed at least one of the guns in the crew's car with intent to use it in the robbery. There is therefore sufficient evidence to support Drew's conviction for the firearms charge.

C. Court Reporter's Failure to Transcribe Audio Evidence at Trial

On appeal, Drew argues that, because the court reporter did not make a verbatim record of evidence admitted at trial, he should receive a new trial. Specifically, Drew notes that the court record did not transcribe audio recordings presented to the jury. Because the audio recordings were not clear, the jury placed undue weight on Zayas's transcripts. According to Drew, if the court reporter struggled with the recordings, then the jury must have struggled to understand them as well.

"Each session of the court . . . shall be recorded verbatim." 28 U.S.C. § 753(b). However, we have held that "[t]he right to a new trial based on a deficiency of the record . . . is premised upon the district court's inability to reconstruct the record." United States v. Charles, 313 F.3d 1278, 1283. (11th Cir. 2002) (quotation marks and citation omitted) (per curiam). "If the same attorney

16

represents an appellant at trial and on appeal, a new trial may be granted only if the defendant can show that the failure to record and preserve a specific portion of the trial visits a hardship on him and prejudices his appeal." Id. (quotation marks and citation omitted). "Thus, substantial and significant omissions from the verbatim transcript do not mandate a reversal if . . . the record can be adequately reconstructed to accord effective appellate review." United States v. Cashwell, 950 F.2d 699, 704 (11th Cir. 1992).

Review of the record reveals that the court reporter did not transcribe the audio recordings played for the jury, but that the same attorney represented Drew at trial and on appeal. Here, Drew has not demonstrated that his appeal was prejudiced by the court reporter's failure to transcribe the audio recordings. The recordings played before the jury are available in the record for review on appeal. The record also contains the transcripts of the recordings provided to the jury. Because all the evidence presented at trial is available for review on appeal, Drew has not shown that his appeal has been prejudiced. He is not entitled to a new trial.

D. Whether Drew's Sentence was Substantively Reasonable

We review sentences imposed by the district court for reasonableness using the abuse-of-discretion standard. See United States v. Booker, 543 U.S. 220, 261 1255 S. Ct. 738, 765-766 (2004); United States v. Pugh, 515 F.3d 1179, 1191

(11th Cir. 2008). Reasonableness review is deferential and "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). Ordinarily, we would expect a sentence within the Guidelines range to be reasonable. Id.

The district court must impose a sentence that is both procedurally and substantively reasonable. Gall v. United States, 552 U.S. __, 128 S. Ct. 586, 597 (2007). "[A] sentence ... may be substantively unreasonable if it does not achieve the purposes of sentencing stated in § 3553(a)." Pugh, 515 F.3d at 1191 (quotation marks and citation omitted). Moreover, we will "remand for resentencing if left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." Id. (quotation marks and citation omitted).

"If the Guidelines calculation is correct, or if the miscalculation is harmless, we consider whether the sentence is reasonable" in light of the factors outlined in § 3553(a) and the district court's reasons for imposing a particular sentence. United States v. Williams, 456 F.3d 1353, 1360-61 (11th Cir. 2006), abrogated on other grounds by Kimbrough v. United States, 552 U.S. 85, 128 S. Ct. 558 (2006).

18

While the district court must consider the factors, it is not required to discuss each factor individually. Talley, 431 F.3d at 786. The court must merely acknowledge that it has considered the defendant's arguments and the § 3553(a) factors. Id.

Drew's 420-month sentence was within the guideline range and below the statutory maximum sentence of life imprisonment. Furthermore, the record reflects that the court explicitly considered Drew's arguments, the guidelines range, and the § 3553(a) factors when it sentenced Drew. In particular, the court emphasized Drew's criminal history, noting that he had a history of making bad decisions, and that he represented a danger to the community. Because the district court considered all of Drew's arguments and considered the factors outlined by § 3553(a), the sentence it imposed was reasonable.

E. Mandatory Minimum Consecutive Sentence for Count Two

Drew argues that we should adopt the Second Circuit's ruling in United States v. Williams, 558 F.3d 166 (2d Cir. 2009), which held that "the mandatory minimum sentence under section 924(c)(1)(A) is . . . inapplicable where the defendant is subject to a longer mandatory minimum sentence for a drug trafficking offense that is part of the same criminal transaction." Id. at 168. According to Drew, if we adopt the Second Circuit's reasoning, he would be exempt from the 60-month mandatory minimum consecutive sentence imposed by

the district court for Count Two. Drew did not raise this issue at the district court.

The interpretation of a criminal statute is a question of law that we review <u>de novo</u>. <u>See</u> <u>United States v. Murrell</u>, 368 F.3d 1283, 1285 (11th Cir. 2004). However, "[a] sentencing issue not raised in the district court is reviewed for plain error." <u>United States v. Richardson</u>, 166 F.3d 1360, 1361 (11th Cir. 1999). We have held that an error cannot be "plain" unless it is "clear under current law." <u>United States v. Humphrey</u>, 164 F.3d 585, 588 (11th Cir. 1999) (quotation marks and citation omitted).

We expressly rejected the Second Circuit's reasoning in <u>Williams</u> and held that the plain language of § 924(c) "dictates consecutive sentences." <u>United States v. Segarra</u>, __ F.3d __, No. 08-17181, 2009 WL 2932242, at *7 (11th Cir. Sept. 15, 2009) (per curiam). Accordingly, we hold that the district court did not err when it sentenced Drew to a consecutive 60-month term for Count Two.

### III. CONCLUSION

Drew appeals his conviction and 420-month sentence for conspiring to possess with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. As we have explained, there was sufficient evidence to support Drew's conviction, Drew is not entitled to a new trial because the court reporter did not transcribe audio recordings

to the jury, Drew's sentence was reasonable, and the district court did not err when it sentenced Drew to a consecutive 60-month term for Count Two. We therefore affirm the judgment of the district court and Drew's sentence.

**AFFIRMED.**